UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **DEIDRE D. BROOKS,** | ) | **CASE NO.1:12CV814** |
| | ) | |
| Plaintiff, | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| vs. | ) | |
| | ) | |
| **OHIO BELL TELEPHONE CO.,** | ) | **OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter comes before the Court upon the Motion for Summary Judgment by Defendant. ECF DKT #15. For the following reasons, the Court GRANTS Defendant's Motion for Summary Judgment.

**I. BACKGROUND**

**A. Plaintiff's Employment History at The Ohio Bell Telephone Co.**

Deidre Brooks ("Plaintiff") is a 45 year old African American woman. Plaintiff started working for The Ohio Bell Telephone Co. ("Ohio Bell" or "Defendant") on October 3, 1994. For the duration of her employment, Plaintiff was a member of the Communications Workers of America Union ("CWA" or "the Union"), and the terms and conditions of her employment were governed by a collective bargaining agreement ("CBA") between Defendant and CWA. Plaintiff worked in Defendant's consumer call center in Cleveland, Ohio for most of the time from 1994 to 2007.

On September 24, 1999, Plaintiff was terminated for an alleged violation of

1

Defendant's Code of Business Conduct. (Brooks Dep. 39). The Union challenged the termination pursuant to the CBA's grievance process called "neutral evaluation." (Brooks Dep. 41; Nykiel Dep. 20-21). Neutral evaluation is a non-binding process in which the parties present their positions, and an arbitrator delivers a non-binding opinion as to which party should prevail. (Redfern Dep. 69-71; Redfern Decl. ¶4, Ex. D). The neutral evaluation took place in July 2000; the arbitrator recommended that Ohio Bell reinstate Brooks, and both parties accepted this opinion. (Brooks Dep. 41; Redfern Dep. 70-71). The arbitrator prepared an award pursuant to the agreement, which states in relevant part:

2. Grievant's net credited service date[1] of October 3, 1994, which was in effect prior to her September 24, 1999, removal from payroll, is reinstated. All periods of service which were included in Grievant's term of employment, as that term is used in the Ameritech Pension Plan ("PP" or the "Plan") as of September 24, 1999, are immediately bridged and shall be included in Grievant's term of employment under the APP as of Grievant's Reemployment Date.

3. *Grievant is awarded no net credited service for the period from her September 24, 1999, removal from the payroll until her Reemployment Date.*

(Brooks Dep. 43, Ex. 2) (emphasis added).

Plaintiff returned to work on July 24, 2000, and her net credited service ("NCS") date continued to be October 4, 1994. Around July 16, 2001, Plaintiff's NCS date was adjusted to August 11, 1995, pursuant to the award *supra*, reflecting Plaintiff's ten-month break in service due to her September 24th termination. (Doc. No. 16-4; Brooks Dep. 72; Redfern

---

[1] Net credited service ("NCS") dates are defined as the "period of continuous employment of an employee in the service of [Ohio Bell]." (Redfern Decl. ¶3.) NCS dates are typically the same as an employee's first day of work, but are adjusted if an employee has a break in service. (Nykiel Dep. 70-71). NCS dates are used to determine seniority for operational decisions, such as selection for surplus-based layoffs. (Redfern Decl. ¶3, Ex. A; Brooks Dep.152; Nykiel Dep. 70).

2

Decl. ¶8, Exs. F-H).  Plaintiff was put on notice of this adjustment while on a job visit at some time before 2007.  (Brooks Dep. 238).

In December 2007, Plaintiff transferred to the Network Plug Management Group ("NPMG") as an inventory specialist ("IS"), and was responsible for inventorying and maintaining plug-in equipment in the central offices ("COs").  (Brooks Dep. 83-86).  Plaintiff's first level supervisor was Gary Goettel ("Goettel"), a white male. (Compl. ¶14; Goettel Dep. 18).  Goettel reported to NPMG Area Manager Barry Burke ("Burke"), and Burke reported to NPMG Director of Network Services George Tuten ("Tuten").  (Goettel Dep. 46).  Tuten reported to Vice President of Field Operations Peter Cornell ("Cornell").  *Id*.  Plaintiff's coworkers were two white males, Ladimer Kristof and William Lierman, and they had NCS dates of February 23, 1965 and December 24, 1994, respectively.  (Redfern Decl. ¶12, Compl. ¶14).

**B. Ohio Bell's Workforce Surplus**

In January 2011, based on a workload reduction that caused a workforce surplus, Tuten determined that Ohio Bell could inventory its COs more efficiently, and that the Cleveland office had more ISs than were needed to inventory the COs in a timely manner.  (Burke Decl. ¶¶3-4).  Based on this determination, NPMG declared a surplus condition to eliminate one IS in Cleveland.  (Burke Decl. ¶5).  The employees who determine a surplus do not know which employees will ultimately be selected for layoff because the surplus process, including the time line and selection of employees, is strictly governed by the CBA. (Redfern Decl. ¶3, Ex. B; Goettel Decl. ¶6; Burke ¶¶5-6).

When there is a surplus condition, Ohio Bell first attempts to eliminate the condition

3

by offering employees the opportunity to transfer to a different business group where there is a need for additional employees, and offering employees a voluntary buy-out called a supplemental income protection plan ("SIPP"). If Ohio Bell is unable to eliminate the need for a layoff, it notifies the employees that have been determined to be "surplus-at-risk[2]." Surplus-at-risk means that the employee's current position is being eliminated in 90 days (Force Disposition Date, or "FDD"), by which time the employee must obtain another position within Ohio Bell or risk layoff. (Redfern Decl. ¶3, Ex. B). If the employee fails to find another position in the 90 day period, the employee has one of three options: (1) elect an Employment Security Commitment ("ESC")[3], (2) elect a Training Opportunity Plan ("TOP")[4], or (3) leave employment after the 90 day period and receive termination pay. The ESC and TOP give the employee options to avoid involuntary termination.

On March 16, 2011, the company offered the ISs in Cleveland a SIPP to eliminate the need for an involuntary layoff, and gave them a deadline of March 22, 2011 to accept. (Brooks Dep. 150-152, Ex. 11). None of the ISs accepted the SIPP offer, and Plaintiff was declared surplus-at-risk as she was the least senior employee based on her NCS date of August 11, 1995. (Redfern Decl. ¶17, Brooks Dep. 152). Plaintiff was notified of her surplus-at-risk status on April 14, 2011. (Brooks Dep. 152-154, Redfern Decl. ¶17). Plaintiff

---

[2] "Surplus-at-risk" employees are determined based on seniority. (Redfern Decl. ¶17)

[3] ESC allows an employee to continue work in her current position until the company offers her another position within her Market Zone, which the employee must accept. (Redfern Decl. ¶3, Exs. B-C; Brooks Dep. 153, Ex. 13).

[4] TOP allows laid off employees to receive termination pay in weekly installments for up to one year. During that time, the employee is given priority consideration for job opportunities in their area. (Redfern Decl. ¶3, Ex.B; Brooks Dep. 153, Ex. 13).

did not submit forms for ESC or TOP, and was subsequently terminated on June 27, 2011, pursuant to the surplus condition process discussed *supra*.

**C. Plaintiff's Grievances with Ohio Bell**

On January 5, 2011 and March 1, 2011, Plaintiff sent emails to Goettel in which she asked why she was being treated differently than her co-workers. (Brooks Dep. 229, Exs. 5, 26). Plaintiff also sent an e-mail to Vice President Cornell on March 4, 2011, regarding her unresolved complaints to Goettel that she was being treated differently. (Brooks Dep. 119-120, 234-235, Ex. 9). Plaintiff subsequently contacted the Union, and the Union filed three grievances on her behalf on April 4, 2011. The grievances alleged that Plaintiff was being subjected to unfair and disrespectful treatment by her supervisor, the company did not follow the CBA with regard to Plaintiff's travel assignments[5], and the management discriminated against her. (Brooks Dep. 248-249, Exs. 28-30). Plaintiff also filed a Charge of Discrimination with EEOC on May 6, 2011. (Brooks Dep. 264, Ex. 32).

In late 2011, after her termination, Plaintiff filed grievances with the CWA to appeal the adjustment of her NCS date. Plaintiff's request for appeal of her NCS date adjustment was denied by the Vice President, President and Executive Board of the CWA. Plaintiff subsequently exhausted her internal appeals. (Doc. No. 14-1). Additionally, in December of 2011, EEOC re-opened Plaintiff's previously closed Charge of Discrimination upon Plaintiff's request that EEOC investigate her adjusted NCS date. (Brooks Dep. 273-274, Ex. 36). When asked by the EEOC to provide new evidence showing the adjusted NCS date was

---

[5] Plaintiff requested to stay in town for an out of town assignment, and was denied. Out of town work is a requirement of the IS position. (Compl. ¶19-20, Brooks Dep. 98-100)

erroneous, Plaintiff failed to respond and the file was closed. *Id*.

## II. STANDARD OF REVIEW

**A. Civil Rule 56 Standard**

A summary judgment shall be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F. 3d 1339, 1347 (6th Cir. 1994). The moving party must do so by either pointing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or by "showing that the materials cited (by the adverse party) do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." See Fed. R. Civ. P. 56(c)(I)(a), (b). A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F. 3d at 1347.

This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass 'n.*, 78 F. 3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F. 2d 399, 404-06 (6th Cir. 1992). The

6

burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Bias v. Advantage*, 905 F.2d 1558, 1563 ( C.A.D.C., 1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass 'n v. Northfield Ins. Co.*, 323 F. 3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

### III. LAW AND ANALYSIS

**A. Plaintiff waived race and gender discrimination claims when she failed to oppose Defendant's Summary Judgment Motion as to those claims**

Plaintiff alleges that she was discriminated against by Goettel and his supervisors because of her race and gender. Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment does not oppose or even address Defendant's Motion on her claims for race and gender discrimination. Plaintiff provided no evidence to rebut Defendant's argument that the alleged adverse acts were not materially adverse. Plaintiff's failure to present any evidence to support her claims of discrimination is a waiver of those claims; therefore, the claims are dismissed. *Shook v. City of Cleveland*, No. 1:04-cv-1220, 2006 U.S. Dist. LEXIS 15011, *3 (N.D. Ohio Mar. 31, 2006) (holding that plaintiff's failure to address certain claims in her opposition must be viewed as abandonment of those claims).

**B. Plaintiff fails to provide evidence that her selection for the surplus was the result of a retaliatory motive**

    **1. Plaintiff fails to establish a prima facie case of retaliation**

Plaintiff alleges that she was laid off based on an incorrect NCS date that was adjusted based on an erroneous interpretation of the arbitration award.  She further alleges that Defendant's actions in terminating her based on the incorrect NCS date was done in retaliation for her participation in protected activities.  To establish a prima facie case of retaliation, a plaintiff must present evidence that: (1) plaintiff engaged in protected activity; (2) plaintiff's employer knew about her protected activity; (3) plaintiff's employer thereafter took an adverse employment action against her; and (4) there is a causal connection between her protected activity and the adverse employment decision.  *Russell v. Univ. of Toledo*, 537 F.3d 596, 609 (6th Cir. 2008).  Plaintiff alleges the following as protected activities:

1. January 5, 2011 email to Goettel in which Plaintiff asked why she was being treated differently. (Brooks Dep. 229, Ex. 26)

2. March 1, 2011 email to Goettel in which Plaintiff asked again why she was being treated differently than the other co-workers. (Brooks Dep. 229, Ex. 5)

3. March 4, 2011 email to VP Cornell in which Plaintiff informs Cornell of the unresolved situation with Goettel, and her concerns about being treated differently. (Brooks Dep. 119-120, Ex. 9).

4. Plaintiff filed three grievances through the Union on April 4, 2011, alleging that, (a) she was subjected to unfair and disrespectful treatment by her supervisor; (b) Defendant did not follow the CBA with regard to travel assignments; and (c) management discriminated against her. (Brooks Dep. 248-249, Exs. 28-30).

5. Plaintiff filed a Charge of Discrimination with the EEOC on May 6, 2011. (Brooks Dep. 264, Ex. 32)

Plaintiff's emails to Goettel and Cornell listed above are not considered protected activities because they never overtly claim illegal discrimination, and there is no evidence that Goettel or Cornell would understand that Plaintiff was reporting discrimination. *Blizzard v. Marion Tech. College*, No. 3:09-cv-1643, 2011 U.S. Dist. LEXIS 35460, *31-32 (N.D. Ohio Mar. 30, 2011) (noting that a plaintiff's email to a supervisor asking why she was being picked on and harassed was not sufficient to constitute protected activity in the absence of a claim of illegal discrimination). The Sixth Circuit held that "[a] vague charge of discrimination in an internal letter or memorandum is insufficient to constitute opposition to an unlawful employment practice." *Booker v. Brown and Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1313 (6th Cir. 1989). Plaintiff merely inquired through her emails as to why she was being treated differently; the emails never mentioned any protected class such as race or gender, or a need to investigate discriminatory action. The lack of any overt claim of discrimination precludes the emails from being protected activity.

Plaintiff's grievances to the Union and her Charge of Discrimination filed with the EEOC constitute protected activity; however, they do not satisfy the causal connection to Plaintiff's termination required for a prima facie case because they occurred after Plaintiff was chosen for the surplus, and after Plaintiff was notified about her selection for the surplus. Defendant knew as of March 22, 2011, that Plaintiff would be declared surplus-at-risk based on her being the least senior employee. Plaintiff did not file grievances with the Union until April 2011, and did not file with the EEOC until May 2011. Defendant could not have retaliated against the Plaintiff for protected activities that had not yet occurred. *Spence v. Donahoe*, No. 11-3203, 2013 U.S. App. LEXIS 3808. *32 (6th Cir. Feb. 21, 2013) (explaining

9

that only those adverse employment decisions that occurred after the plaintiff engaged in protected activity are relevant to a claim of retaliation). Additionally, based on Defendant's policies regarding surplus-at-risk employees described *supra*, Defendant could not have known that Plaintiff would not accept an ESC or TOP offer which would have allowed her to remain within Ohio Bell. Defendant did not have the power to manipulate the CBA governed process for surplus conditions to terminate Plaintiff; thus, there is no causal connection between Plaintiff's protected activity and her selection as surplus-at-risk and subsequent termination.

Furthermore, the individuals that Plaintiff claims retaliated against her – Goettel, Tuten and Cornell – had no involvement in adjusting Plaintiff's NCS date; so, they could not have manipulated such date to serve a retaliatory motive. These individuals additionally had no influence or control over which employee was chosen as the surplus-at-risk employee, as the surplus process is controlled entirely by the CBA. The individuals that Plaintiff claims retaliated against her had no involvement in the adverse employment activities that she claims were retaliatory; therefore, Plaintiff has failed to satisfy the required causal connection between her protected activity and her termination, and consequently has failed to establish a prima facie case of retaliation.

**2. Plaintiff fails to show that Defendant's reasons for selecting Plaintiff for surplus were pretext for retaliation**

Assuming that Plaintiff could establish a prima facie case of retaliation, she fails to satisfy her burden of producing evidence that establishes that Defendant's proffered reasons are pretext for retaliation. Once a plaintiff has established a prima facie case, the burden shifts to the defendant to articulate legitimate, nondiscriminatory reasons for the challenged

employment decision. *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If defendant succeeds in establishing such reasons, the burden shifts back to the plaintiff to discredit the defendant's explanation by showing that the explanation is pretext for retaliation. *Id*. at 804-805. To establish pretext, Plaintiff must show that Defendant's stated reason: (1) has no basis in fact; (2) did not actually motivate the adverse action; or (3) was insufficient to motivate the adverse action. *Manzer v. Diamond Shamrock Chems. Corp.*, 29 F.3d 1078, 1084 (6th Cir. 1994). Absent one of the three showings listed *supra*, Defendant's explanations must be accepted.

An employer is entitled to summary judgment if the evidence conclusively reveals other, nonretaliatory reasons for the employer's decision to terminate the employee, or the plaintiff has only created a weak issue of fact as to whether the employer's reason is untrue and there is a large amount of uncontroverted evidence that retaliation has not occurred. *Reeves v. Sanderson Plumbing Prods., Inc.*, 197 F. 3d 688 (5th Cir. 1999) (citing *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1291-1292 (D.C. Cir. 1998)). The evidence shows that Plaintiff's NCS date was adjusted pursuant to the arbitrator's award, and the adjustment is consistent with previous awards from the same arbitrator in similar cases. (Redfern Decl. ¶10, Ex. I). Additionally, the Union and EEOC agreed with Defendant's interpretation of the award. (Redfern Decl. ¶¶10-11, Exs. I-K; ECT DKT #14-1; Brooks Dep. 275, Ex. 38). Based on Plaintiff's widely agreed-upon adjusted NCS date making her the least senior employee, her selection for the surplus was strictly in accordance with the CBA's surplus process described *supra*. Plaintiff has not provided any evidence that Defendant deviated from the CBA process in any way, and has not provided any evidence to dispute the legitimacy of Ohio

Bell's need for a layoff based on a workload reduction. *McCarthy v. Ameritech Publ'g, Inc.*, No. 3:10-cv-319, 2012 U.S. Dist. LEXIS 166808 (S.D. Ohio Nov. 23, 2012) (granting summary judgment where the plaintiff's selection for a workforce reduction was based on her seniority pursuant to a collective bargaining agreement and there was no competent evidence to dispute her seniority ranking).  The evidence on the record strongly shows that Defendant had a legitimate reason for selecting Plaintiff as surplus-at-risk and terminating her, and Plaintiff makes a very weak showing of evidence to rebut Defendant's explanation.

Plaintiff argues that Defendant failed to investigate the possible inaccuracy of her NCS date to serve its retaliatory purposes; thus, making its explanation that her termination was based on seniority pretext for retaliation.  This argument is without merit because Plaintiff  fails to provide competent evidence that Defendant should have been put on notice that her NCS date needed to be investigated.  Plaintiff fails to produce any evidence that she reported her NCS date as an issue prior to her termination.  Plaintiff never mentioned an issue with her NCS date in her emails to Goettel and Cornell *supra*, and she never reported an issue with her NCS date in the numerous grievances that she filed through the Union and EEOC. Furthermore, when Plaintiff filled out forms for ESC and TOP[6], she self reported her NCS date as the adjusted date of August 11, 1995. (Brooks Dep. 168-169, Ex. 17-18). Defendant had no reason to believe that Plaintiff's NCS date was an issue; thus, it had no reason to investigate what it considered to be a legitimate NCS date, and Plaintiff's claim that Defendant's failure to investigate her NCS date served as pretext for retaliation fails.

Even assuming that Plaintiff's NCS date is incorrect, which it is not, an erroneous

---

[6] Plaintiff filled out forms for TOP and ESC, but never submitted them.

interpretation of the date would not support Plaintiff's claim of retaliation unless evidence shows that such error was made with retaliatory intent. *Harris v. Metro. Gov't of Nashville and Davidson County*, 594 F.3d 476, 486 (6th Cir. 2010) (holding that even if the plaintiff showed that the defendant made an employment decision based on "mistaken, foolish, trivial or baseless" facts, that would not establish pretext where evidence showed that the employer reasonably and honestly believed that to be the situation). Plaintiff's argument that her NCS date may have been improperly interpreted does not create a genuine issue of material fact, because the NCS date alone is not a material fact. The only material fact regarding Plaintiff's NCS date is Defendant's reasoning for its interpretation, to which there is no genuine issue. There is no genuine issue as to any material fact, and Defendant is entitled to summary judgment as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment in full.

**IT IS SO ORDERED.**

<u>s/ Christopher A. Boyko</u>
**CHRISTOPHER A. BOYKO**
**United States District Judge**

**Dated: July 17, 2013**